IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 14, 2009

## STATE OF TENNESSEE v. CHRISTOPHER R. RICKMAN

**Direct Appeal from the Circuit Court for McNairy County**
**No. 2290     J. Weber McCraw, Judge**

**No. W2008-02012-CCA-R3-CD  - Filed November 5, 2009**

The defendant, Christopher R. Rickman, was convicted by a McNairy County jury of theft of property greater than $1000, a Class D felony, and possession of drug paraphernalia, a Class A misdemeanor.  He was subsequently sentenced to concurrent sentences of three years, to be suspended following service of ninety days, and eleven months and twenty-nine days.  On appeal, the defendant raises two issues for our review: (1) whether the evidence presented was sufficient to support the convictions; and (2) whether the trial court erred in denying a sentence of full probation. Following review of the record, we find no error and affirm the convictions and resulting sentences.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Chadwick G. Hunt, Savannah, Tennessee, for the appellant, Christopher R. Rickman.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Bob Gray, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Factual Background

Joey Maness and his brother, Mike Maness, were engaged in the business of building and selling residential property.  The two built and furnished one such piece of property as a "spec house."  In the summer of 2006, this house was robbed of several appliances and items of furniture, which had been purchased for $5000.  The theft was reported to local police.

In February 2007, Deputy Brad Smith of the McNairy County Sheriff's Department was dispatched to a domestic dispute call at the residence of the defendant and his girlfriend, Tiffany Morris.  Ms. Morris had called the police and requested their presence while she removed her

personal property from the home. After the defendant arrived, he, Ms. Morris, and Deputy Smith entered the residence. Deputy Smith, who had entered to "keep the peace" between the defendant and Ms. Morris, followed Ms. Morris as she collected her belongings. While inside the residence, Deputy Smith observed several appliances and items of furniture, which he believed matched the description of items which had been reported stolen. Specifically, Deputy Smith noticed a Frigidaire dishwasher, a Frigidaire refrigerator, a dining room set, a bedroom suite, a night stand, two dressers, a coffee table, and two end tables. However, he made no mention of his suspicions to either the defendant or Ms. Morris.

Upon returning to the station, Deputy Smith again examined the theft report describing the stolen property. Believing that the items were located in the defendant's residence, he obtained a search warrant for the residence. A few days later, Deputy Smith and fellow officers executed the warrant at the defendant's house, although the defendant was not present at the time. Upon searching the residence, it was verified that the serial numbers on the dishwasher and the refrigerator matched those reported stolen from the Maness brothers. Joey Maness came to the defendant's house and identified the furniture. The property was removed and returned to the owners. However, because of damages to the property, it had decreased in value by sixty-five to seventy-five percent.

While in the home, Deputy Smith also observed, in plain view, six glass pipes, which were used to smoke methamphetamine. The pipes had residue, which he believed to be methamphetamine, and burn marks on the bottoms. In addition, several plastic baggies containing residue and a set of electronic scales were also discovered.

Based upon the foregoing, a McNairy County grand jury returned an indictment charging the defendant with: (1) aggravated burglary; (2) theft of property between $1000 and $10,000; (3) possession of drug paraphernalia; and (4) theft between $500 and $1000. At the subsequent jury trial, the defendant presented the testimony of Ms. Morris, now his fiancé, and his mother, who each testified that the items had been purchased at the Crump Flea Market in August 2006. Two receipts dated "August 12, 2006," indicating the purchase of a bedroom suite, a refrigerator, and a dishwasher, were also introduced. Additionally, Ms. Morris testified that the pipes found in the home were hers. After the evidence was presented, the State dismissed the burglary and misdemeanor theft charges. The jury subsequently found the defendant guilty of theft between $1000 and $10,000 and possession of drug paraphernalia. Following a sentencing hearing, the trial court sentenced the defendant to three years for the theft conviction, suspended following service of ninety days, and to eleven months and twenty-nine days for the drug paraphernalia conviction. No motion for new trial was filed, but the defendant filed a timely notice of appeal.

## Analysis

One appeal, the defendant has raised two issues for review. First, he contends that the evidence is insufficient to support his convictions. Next, he contends that the trial court erred in denying a sentence of full probation.

## I. Sufficiency of the Evidence

First, the defendant contends that the State failed to prove beyond a reasonable doubt that he committed either the theft or the possession of drug paraphernalia. Specifically, he contends that "[a]ll State witnesses testified that they had no direct proof of any crime by [the defendant], while all [the defendant's] witnesses testified that the property was purchased at the Crump Flea Market, and that the drug paraphernalia even belonged to . . . Ms. Morris." The defendant relies upon the facts that no witness was able to specify the date of the theft, that the home was shared by the defendant and Ms. Morris, and that no one directly witnessed the defendant commit the theft.

In considering the issue of sufficiency of the evidence, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt so that, on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Although a conviction may be based entirely upon circumstantial evidence, *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1974), in such cases, the facts must be "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991) (citing *State v. Duncan*, 698 S.W.2d 63 (Tenn. 1985)). However, as in the case of direct evidence, the weight to be given circumstantial evidence and "the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451, 457 (Tenn. 1958) (citations omitted).

As noted, the defendant was convicted of theft of property over $1000 and unlawful possession of drug paraphernalia. A person commits theft when he "knowingly obtains or exercises control over the property without the owner's effective consent" and with the intent to deprive the owner of property, which was valued between $1000 and $10,000. T.C.A. § 39-14-103. To support a conviction for unlawful possession of drug paraphernalia, the State is required to show that the

defendant did unlawfully and knowingly possess drug paraphernalia with the intent to introduce a controlled substance into the human body. T.C.A. § 39-17-425 (2006).

Viewing the evidence in the light most favorable to the State, we conclude that the evidence is sufficient to support both convictions. The defendant's argument is essentially a credibility challenge, as he is asking this court to accredit his fiance's and his mother's testimony that the property was purchased at the Crump Flea Market. However, their testimony was put before the jury and clearly rejected, based upon the verdicts of guilty. It is the jury who is charged with making credibility determination, not this court. *State v. Smith*, 24 S.W.3d 274, 278 (Tenn. 2000). It is not the function of this court to reweigh those determinations on appeal. *Id*. at 278-79. As noted, the testimony was presented to the jury and rejected, a decision which this court will not revisit.

The evidence, when viewed in the light most favorable to the State, is sufficient to support the convictions. Both Mike and Joey Maness testified that furniture and appliances were taken from their "spec house" without their effective consent. Although there was some discrepancy in their testimony with regard to the value of this property, each testified that it was greater than $1000. These items were located in the defendant's home and specifically identified as the items taken, some even by serial number. The defendant's mother and his fiancé each testified that the property came into the defendant's possession in August 2006, shortly after the property was taken from the Maness brothers. We note that possession of recently stolen property, if not satisfactorily explained, is a circumstance from which the trier of fact may draw an inference and find that the person in possession knew that the property had been stolen. *State v. Hatchett*, 560 S.W.2d 627, 629 (Tenn. 1987). Thus, although not specifically establishing that the defendant removed the property from the house, the evidence is more than sufficient to establish that the defendant exercised control over the property, which we may infer he knew to be stolen, with the intent to deprive the owner.

Likewise, the record establishes the presence of illegal drug paraphernalia, including pipes with drug residue, baggies, and scales, in the defendant's residence. The presence of residue on the pipes supports the inference that they had been used in smoking the methamphetamine. Despite Ms. Morris' testimony that the pipes were hers, which, as noted, was rejected by the jury, it is of note that these items were found in the defendant's home several days after Ms. Morris moved out. Thus, the defendant is not entitled to relief on this issue.

## II. Probation

Next, the defendant contends that the trial court erred in ordering a sentence of split confinement rather than granting full probation. According to the defendant, his "record, when considered in conjunction with the remainder of his Pre-Sentence Report, did not support the imposition of a mandatory ninety-day jail sentence. . . ." Specifically, he relies upon the facts that he only has one prior felony conviction and "several misdemeanor convictions," is working two jobs to support his children, and has a "good working relationship" with his Mississippi probation officer.

When an accused challenges the length, range, or manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2006); *State v. Ashby*, 823 S.W.2d 166,

-4-

169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." Ashby, 823 S.W.2d at 169. Furthermore, we emphasize that facts relevant to sentencing must be established by a preponderance of the evidence and not beyond a reasonable doubt. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000). The party challenging a sentence bears the burden of establishing that the sentence is erroneous. T.C.A. § 40-35-401(d), Sentencing Comm'n Cmts.

In this case, the defendant is eligible for an alternative sentence because his sentences were ten years or less and the offenses for which he was convicted are not specifically excluded by statute. T.C.A. §§ 40-35-102(6), -303(a)(2006). Under the 2005 amendment, a Range I offender "should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *See* T.C.A. § 40-35-102(6). Evidence to the contrary may be established by showing that: (1) confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct; (2) confinement is needed to avoid depreciating the seriousness of the offense, or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses; or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. *Ashby*, 823 S.W.2d at 169 (citing T.C.A. § 40-35-103(1)(A)-(C)). The trial court may also consider the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114. T.C.A. § 40-35-210(b)(5) (2006); *State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). In addition, a trial court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. T.C.A. § 40-35-103(5); *Boston*, 938 S.W.2d at 438.

However, the defendant is required to establish his "suitability for full probation." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); T.C.A. § 40-35-303(b) (2006). A defendant seeking full probation bears the burden of showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting *Hooper v. State*, 201 Tenn. 156, 297 S.W.2d 78, 81 (Tenn. 1956), *overruled on other ground by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000)). Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978).

In denying full probation in this case, the trial court made the following findings:

> The Court considers, as counsel pointed out, [the defendant's] family considerations, but the Court also places a fairly heavy emphasis on his previous actions and the character of the defendant. He does have several criminal convictions over the years and he's still a young man. According to the pre-sentence report, he's [twenty-eight] years old. So the Court must consider whether or not it's reasonably likely that he will be rehabilitated and consider any risk that during his period of probation whether or not he will commit another crime. The Court does note that he has been placed on probation several times. While he is on probation now, counsel has appropriately noted that that probation period did not determine until after this offense had

-5-

occurred, but he does have prior circumstances of being on probation. He does have a prior conviction for unlawful drug paraphernalia which the jury found him guilty of. He does have a history with drugs and his criminal history goes back to when he was [eighteen] which were basically traffic offenses but then if you look at 1997, also when he was [eighteen], he did have a possession of drug charge.

So the Court looks and finds that measures less restrictive than confinement have frequently been applied unsuccessfully to the defendant. He was placed on probation during these other periods and still he is committing other crimes. Therefore, the Court does place a heavy emphasis on his criminal history and on his probation periods which have been unsuccessful as far as he continues to commit crimes.

Following review, we conclude that the record supports the trial court's finding that measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. The record indicates that prior to committing the instant offenses, the defendant had received probation for four separate convictions, in addition to his subsequent felony violation in Mississippi, which were not factored into the court's instant determination. Three of these prior convictions occurred in 2004. The record further indicates that the defendant committed two of the offenses while on probation. Based upon these facts, we cannot conclude that the trial court erred in determining that the defendant failed to carry his burden to establish his entitlement to a sentence of full probation.

## CONCLUSION

Based upon the foregoing, the judgments of conviction and resulting sentences are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE